**In re Edgar S. SKINNER, Debtor.**

**Edgar S. SKINNER, Debtor–Appellant,**

**and**

**Roy W. Wolfe, III, Trustee,**

**v.**

**SMALL BUSINESS ADMINISTRATION, Appellee.**

**Civil Action No. 96–0124–H.**

United States District Court, W.D. Virginia, Harrisonburg Division.

Nov. 21, 1996.

Gary Michael Bowman, Roanoke, VA, for Debtor–Appellant.

Roy Vergil Wolfe, III, Trustee, Julias, Blatt & Wolfe, P.C., Harrisonburg, VA, for Appellee.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

The debtor in this case, Edgar S. Skinner, started a recreation business, Arena Sports, Inc. ("Arena Sports"), which failed. He obtained financing from First American Bank of Virginia ("First American"), which was secured by a Deed of Trust on the debtor's home and the debtor's business premises. The Small Business Administration ("SBA") guaranteed the financing; its guaranty was also secured by a Deed of Trust on the debtor's home and business premises. First American's lien was subordinated to that of the SBA.

On its first payment to First American, Arena Sports defaulted. First American demanded payment from the SBA based on its guaranty, and the SBA paid First American $105,211.15, a percentage of the total amount owed First American. On December 6, 1995, the debtor filed a voluntary petition of bankruptcy under Chapter 11 of the United States Bankruptcy Code, which the bankruptcy court subsequently converted to Chapter 7. A meeting among the creditors was held, after which First American failed to file a proof of claim in accordance with Fed.Bankr.R.P. 3002(c) within the applicable time period.

On October 24, 1996, the trustee, Roy V. Wolfe, III, moved the bankruptcy court to sell the Arena Sports real estate. The parties agree, for purposes of this appeal, that the Arena Sports real estate has a value of about $484,500, and the debtor's home is valued at approximately $100,000. According to the debtor, Arena Sports owes the SBA $105,211.15 in principal; the debtor claims that he does not know how much money Arena Sports owes First American due to its failure to file a proof of claim.

On July 24, 1996, the SBA filed a motion for relief from stay before the bankruptcy court, requesting that it be permitted to foreclose on the debtor's home. The bankruptcy court granted this motion on September 16, 1996. The sale of the debtor's home was scheduled to take place on November 22, 1996. The debtor filed a motion for stay pending appeal, which the bankruptcy court denied on November 8, 1996. From this denial, the debtor appeals, requesting, pursuant to Fed.R.Bankr.P. 8005, that this court institute a stay pending appeal of the bankruptcy court's order permitting the foreclosure of the debtor's home.

## I.

Under *Long v. Robinson,* 432 F.2d 977 (4th Cir.1970), "a party seeking a stay must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." *Id.* at 979. These four factors, identical to those that determine whether a preliminary injunction should issue, have been analyzed under the framework set forth in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.,* 550 F.2d 189, 196 (4th Cir.1977), governing preliminary injunctions. *Continental Securities v. Shenandoah Nursing Home,* 188 B.R. 205 (W.D.Va.1995) (Michael, J.). *Blackwelder* directs the court first to determine

whether the plaintiff will suffer irreparable injury if he does not receive injunctive relief. After this inquiry has been resolved, the court must pass upon the likelihood of harm to the defendant should an injunction issue and then weigh this harm against the countervailing injury to the plaintiff without injunctive relief. If the balance of harms clearly favors the plaintiff, the court need only find that the plaintiff has raised substantial and serious questions on the merits for preliminary relief to issue; if the potential harm to the parties is more evenly balanced, the plaintiff must make a stronger showing of success on the merits. The final factor for the court to consider is the public interest. *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,* 22 F.3d 546, 551 (4th Cir.1994) (quoting *Direx Israel Ltd. v. Breakthrough Medical Corp.,* 952 F.2d 802, 812–13 (4th Cir.1991)). The case law signals a preference in favor of maintaining the status quo. *Feller v. Brock,* 802 F.2d 722, 727 (4th Cir.1986) (citing *Blackwelder* ).

The bankruptcy court concluded that the debtor in this case would suffer irreparable injury without a stay and that, although the SBA would also be injured by the stay, the balance of harms "decidedly" favored the debtor. However, the bankruptcy court found that the debtor had failed to raise substantial and serious questions on the merits. Based on this assessment, the bankruptcy court denied the debtor's motion for a stay.

■ Review of the bankruptcy court's conclusions of law by this court is de novo. *See In re Linkous,* 141 B.R. 890 (W.D.Va.1992).

## II.

■ Clearly, the debtor in this case will suffer irreparable injury without a stay—he will lose the home in which he currently resides, probably permanently. Almost certainly, the nonpecuniary injury from such a loss will not be compensated regardless who ultimately prevails on the merits. According to the SBA it will be harmed should a stay issue—it argues that the longer the debtor's house remains unsold, the greater the equity dissipation. Assuming this to be so, the

harm to the debtor outweighs any injury to the SBA: the loss of one's home cannot compare to (a possibly marginal) erosion of equity. Finally, to the extent public interest factors into the analysis, it favors the debtor. Although satisfaction of debts is no doubt supported by public interest, even stronger is the policy against potentially unnecessary forfeiture of homes and disturbance of the status quo. Hence, if the debtor has raised serious and substantial questions on the merits, a stay should issue.

## III.

■ The debtor in this case offers only one legal argument to support his motion for a stay. The debtor claims that First American's failure to file a proof of claim prevents it from participating in any disbursement of proceeds to be derived from the trustee's sale of the Arena Sports real estate. As a consequence, the debtor argues, there is no need to sell his home, because the proceeds from the Arena Sports real estate will suffice to meet all creditors' claims. As an additional equitable argument, the debtor urges that the proceeds from the Arena Sports real estate may well satisfy all outstanding debts, including that of First American; hence, the debtor requests that the court exercise its equitable powers and order the parties to await the imminent sale of Arena Sports before permitting foreclosure of the debtor's home.

The bankruptcy court rejected the debtor's argument because it found that failure to file a proof of claim will not void a secured creditor's claim. The SBA continues with this same refrain, and, in fact, makes no other legal argument in its opposition to the debtor's motion for a stay. While aware that the SBA had little time to respond to the debtor's appeal, the court finds the SBA's reply to the issues raised by the debtor to some degree unresponsive.

The debtor concedes that 11 U.S.C. § 506(d)(2) makes clear that failure to file proof of claim does not void a secured creditor's claim. The statute provides:

(d) To the extent that a lien secures a claim against the debtor that is not an

allowed secured claim, such lien is void, unless—

. . . . .

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of claim under section 501 of this title.

*Id.* § 506(d)(2); *see Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) (stating that a lien passes unaffected through bankruptcy proceedings).

Nonetheless, the debtor contends that even though First American's lien is not void, it must seek to satisfy its lien by methods other than recovery from the trustee's sale of the Arena Sports real estate. According to the debtor, when the bankruptcy court (and not the creditor) has jurisdiction of the secured collateral, a creditor cannot participate in a Chapter 7 liquidation unless he files a proof of claim. Accordingly, the debtor maintains, First American cannot share in the proceeds of the sale of the Arena Sports real estate.

Venerable authority supports the debtor's position. The Collier Bankruptcy Manual crisply and cleanly warns that in cases filed under Chapter 7 "[t]hose who have failed to file any proof of claim ... will in no event participate in the distribution." 2 Collier Bankruptcy Manual ¶ 501.04 & n. 21 (3d ed. 1996) (explaining that "[t]he assets of a chapter 7 debtor are to be distributed in accordance with the provisions of 11 U.S.C. § 726"); *see In re Ellington,* 151 B.R. 90, 97 (Bankr.W.D.Tex.1993) ("Only those creditors who file a proof of claim are entitled to a distribution.") (emphasis and citations omitted); *In re Rhoades,* 34 B.R. 168, 169 (Bankr.D.Vt.1983) ("In the instant case, plaintiffs did not file a proof of claim, and no claim may now be proved, the time for the filing of claims having expired. Not having an allowed claim, the plaintiffs have no right to distribution in satisfaction of an alleged claim under the debtors' chapter 13 plan.") (citations omitted).

In *Rhoades* the court found that the plaintiffs' "lien survives plaintiffs' failure to seek allowance of their secured claims," and proceeded to grant them the relief they requested. *Id.* at 170. This is consistent with the debtor's claim that although First American's lien is not voided, and First American continues to have an interest in the debtor's property, it nonetheless cannot recover from a distribution pursuant to any bankruptcy plan.

In contrast to *Ellington* and *Rhoades,* however, *In re Atoka Agricultural Systems, Inc.,* 39 B.R. 474, 476 (Bankr.E.D.Va.1984), held that even though no proof of claim was filed "it would be improper for this [c]ourt to hold that [creditor's] lien is void because of the lack of a Proof of Claim. It then must follow that [creditor's] lien attaches to the proceeds of the auction held in escrow by the trustee." 39 B.R. at 476. The first portion of the conclusion is entirely noncontroversial; the second, however, does not necessarily follow from the first (that it *must* be that the creditor's lien attaches to the auction proceeds). Although both the bankruptcy court and the SBA rely on *Atoka,* neither the bankruptcy court nor the SBA address the apparent contradiction between Collier's, *Ellington,* and *Rhoades,* on the one hand, and *Atoka,* on the other hand. Indeed, the bankruptcy court and the SBA do not answer the debtor's argument that, although not void, First American's lien cannot be satisfied by proceeds from the sale of the Arena Sports real estate. Left unexplored is the effect of First American's potential exclusion from participation on the debtor's financial status. Given this uncertainty coupled with the authority supporting the debtor's position, the court concludes that the debtor has raised serious and substantial questions on the merits. Based on this analysis, the court grants the debtor's motion for a stay of the bankruptcy court's order granting relief from stay to the SBA.[1]

Further favoring the grant of a stay is the important, unresolved question of the amount owed to First American, apparently unknown to the debtor. Because the court finds that

---

1. Because the court finds that the debtor has raised serious and substantial questions on the merits, the court need not address the debtor's

argument that equitable considerations by themselves warrant granting the debtor's motion for a stay.

the extent of Arena Sports' debt should be pinned down before further proceedings transpire, the court remands this case to the bankruptcy court to determine what is owed First American by Arena Sports.

An appropriate Order shall this day issue.